IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| JENNIFER P. CLARK,             ) | |
|                                ) | |
|    Plaintiff,                  ) | |
|                                ) | CIVIL ACTION NO. |
|    v.                          ) | 2:08cv173-MHT |
|                                ) | (WO) |
| JASON J. DEAL and              ) | |
| E. PAUL STANLEY,               ) | |
|                                ) | |
|    Defendants.                 ) | |

<u>OPINION AND ORDER</u>

Plaintiff Jennifer P. Clark, an Alabama attorney, charges that two Georgia residents (defendant Jason J. Deal, a Superior Court Judge of Hall County, Georgia, and E. Paul Stanley, an attorney who also resides in Hall County, Georgia) published and distributed a court order that defamed her.  Diversity-of-citizenship jurisdiction is proper pursuant to 28 U.S.C. § 1332.

Before the court are Judge Deal's and Attorney Stanley's motions to dismiss and alternative motions to transfer.  This action will be transferred to the United

States District Court for the Northern District of Georgia.

I.

This lawsuit arises from orders entered by Judge Deal in a state-court lawsuit, Clark v. City of Flowery Branch, No. 03cv1830 (Super. Ct. Of Hall County, Ga. filed Oct. 30, 2003).  A chronology of events leading to this federal lawsuit is as follows:

October 30, 2003 – Lewis Clark filed a lawsuit in the Superior Court of Hall County against the City of Flowery Branch, Georgia and others.

November 12, 2003 – Judge Deal granted permission to Attorney Clark, a member of the Alabama bar, to represent Larry Clark pro hoc vice.

November 14, 2005 – Judge Deal issued an order requiring that Attorney Clark discontinue serving as counsel by November 15, 2005 "or as soon as practicable." He further permitted Attorney Stanley to become counsel

2

for Lewis Clark. He also permitted Attorney Braxton Blake Lowe to represent Larry Clark pro hoc vice.

June 9, 2006 - Attorney Clark filed an application that she again be added as pro hoc vice counsel for Larry Clark.

July 14, 2006 - Citing his previous order "unequivocally revoking Ms. Clark's pro hac vice status," Judge Deal denied Attorney Clark's renewed application. He reasoned that, during the time Attorney Clark had previously served as pro hac vice, the proceedings had "been marked by combative behavior between the parties as well as repeated delay in the progression of discovery, scheduling of mediation and compliance with the Court's instructions."

July 20, 2006 – Attorney Clark wrote a letter to the court asking that it specify how she had acted combatively and what discovery deadlines she had failed to meet. She charged that the factual representations in the court's July 14 order were false.

February 26, 2007 – Attorney Clark filed a complaint with the Judicial Qualifications Commission against Judge Deal. She alleged that the court's July 14 order contained false statements.

February 28, 2007 – In light the complaint filed with the Judicial Qualifications Commission, Judge Deal granted Attorney Clark's motion that he recuse himself; he transferred the case to the Chief Judge of the Hall County Superior Court so that the case could be reassigned to another judge.

March 21, 2007 - Attorney Clark wrote another letter, addressed to Judge Deal, asking that he correct his order accusing her of being combative and charging that she had regularly traversed court deadlines.

March 29, 2007 – Judge Deal issued an order stating that Attorney Clark had engaged in ex parte written communication with the court; he was presumably was referring to her March 21 letter. He asked that the

written communication be made available to all parties in the case.

<u>April 10, 2007</u> – Attorney Clark filed the March 21 letter that she wrote to Judge Deal.

<u>January 4, 2008</u> – Attorney Stanley filed a complaint with the Alabama Bar Association against Attorney Clark based on her actions in the Georgia lawsuit.

<u>February 11, 2008</u> – Attorney Clark wrote another letter to Judge Deal, asking him to retract the statements he had made in the orders of July 14, 2006, and March 29, 2007.

<u>February 28, 2008</u> – Attorney Clark wrote a letter to Attorney Stanley requesting that he retract the statements he caused to be published by the Alabama Bar accusing her of unprofessional behavior.  She stated that, if he did not retract these statements by March 7, 2008, she would file a lawsuit against him for defamation.

<u>March 12, 2008</u> – Attorney Clark filed this federal lawsuit, accusing both Judge Deal and Attorney Stanley of defaming her.  She seeks ten million dollars in damages from each of them, as well as preliminary and permanent injunctive relief.

II.

A. Judge Deal

Judge Deal contends that this federal court lacks personal jurisdiction over him.  District courts are guided by a two-part analysis when determining whether to assert personal jurisdiction over a nonresident defendant.  <u>Cable/Home Communication Corp. v. Network Productions, Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990); <u>Alexander Proudfoot Co. World Headquarters v. Thayer</u>, 877 F.2d 912, 919 (11th Cir. 1989).  Courts look to whether the state's long-arm statute permits jurisdiction over the suit.  <u>Cable/Home Communication Corp.</u>, 902 F.2d at 855; <u>Alexander Proudfoot Co.</u>, 877 F.2d at 919.  Second,

courts look to whether the nonresident defendant has had sufficient minimum contacts with the state to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Cable/Home Communication Corp., 902 F.2d at 855; Alexander Proudfoot Co., 877 F.2d at 919.  Both prongs of the analysis must be satisfied for federal or state courts to exercise personal jurisdiction over a nonresident defendant.

"Jurisdiction of the Alabama courts extends to the permissible limits of due process under [its] long-arm rule, Rule 4.2, Ala. R. Civ. P." Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910, 911 (Ala. 1993); see also Ex parte Hospital Espanol de Auxilio Mutuo de Puerto Rico, Inc., 945 So.2d 437 (Ala. 2006)  Thus, in this case, the two-part inquiry collapses into

one determination: whether exercising personal jurisdiction over a non-defendant would offend due process.

Two types of personal jurisdiction exist: specific and general. Specific jurisdiction is based on the party's contacts with the forum state that are related to the cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation. Thomas v. Mitsubishi Motor North America, Inc., 436 F.Supp.2d 1250, 1253 (M.D.Ala. 2006) (Albritton, J.). There is no allegation here that Judge Deal has had general contacts with Alabama unrelated to this lawsuit.

Before this court may exercise 'specific' personal jurisdiction over Judge Deal, due process requires that he have had "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J. concurring in judgment).  This warning requirement is satisfied when a defendant has "purposefully directed" his activities at the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King, 471 U.S. at 472 (quoting Helicopteros Nacionales de Colombia, 466 U.S. at 414).  A defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there.  Burger King, 471 U.S. at 474; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In this case, Attorney Clark has failed to show that this court may exercise personal jurisdiction over Judge Deal.  He is Georgia citizen who is being sued because of orders he wrote while serving as a judge in a Georgia state court.  There is absolutely no evidence that, when

9

he authored the state-court orders, he was purposely directing his activities to the State of Alabama. Simply put, no person would reasonably anticipate being haled into an Alabama court because of orders he wrote as a Georgia state judge.

It is not enough that a third party in Alabama used Judge Deal's orders as a basis to investigate a complaint against Attorney Clark. Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"). Judge Deal wrote the two orders to resolve disputes arising in a Georgia lawsuit. Further, his orders focused entirely on Attorney Clark's activities in that Georgia suit.

While it may have been, at best, marginally foreseeable that some individuals in Alabama may read his orders concerning a member of the Alabama Bar, this kind of attenuated possibility is not sufficient to sustain

10

personal jurisdiction over him.  See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112 (1987) (finding that the defendant's mere awareness that some of its products would eventually enter the forum state was not enough to support the exercise of personal jurisdiction; the Court instead required some purposeful act, directed at the forum state); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) (holding that an Oklahoma court could not, consistent with the Due Process Clause, exercise jurisdiction over a New York automobile distributor and a Connecticut retail automobile dealer in a products liability action arising from an automobile accident that occurred in Oklahoma).  Judge Deal may not be haled into this jurisdiction as a result of such random and attenuated contacts, see Burger King, 471 U.S. at 475, or because of the unilateral activity of a third person.  See Burger King, 471 U.S. at 475; Helicopteros, 466 U.S. at 417.

11

The next question is, What should the court do since it has no personal jurisdiction over Judge Deal?  Under 28 U.S.C. § 1406(a), "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  The Supreme Court has interpreted this provision to mean that a court may transfer a case when it lacks personal jurisdiction over a defendant.  Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962) (approving transfer under § 1406(a) even where both proper venue and personal jurisdiction were lacking because Congress enacted § 1406(a) to remove obstacles that impede expeditious and orderly adjudication.); see also Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc., 566 F.2d 523, 524 (5th Cir. 1978).  Here, because Judge Deal authored allegedly defamatory orders in the Northern District of Georgia and because he is subject to personal jurisdiction in Georgia, this court

12

will transfer the claims against him to the Northern District of Georgia pursuant to § 1406(a).


### B. Attorney Stanley

The court will assume that it has personal jurisdiction over Attorney Stanley.  The question, therefore, is whether this case should nonetheless be transferred.  28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought."  The district court has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988), and a court faced with deciding whether to transfer a matter must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  A district court may properly transfer a case

13

to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be easiest, and most expeditious and inexpensive." C.M.B. Foods, Inc. v. Corral of Middle Ga., 396 F.Supp.2d 1283, 1286 (M.D. Ala. 2005) (Thompson, J.).

Resolution of a case under § 1404(a) requires a two-step process. First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," Folkes v. Haley, 64 F.Supp.2d 1152, 1155 (M.D. Ala. 1999) (DeMent, J.); then, the court "must decide whether the balance of convenience favors transfer." Id. In this case, none of the parties resides in the Middle District of Alabama. More importantly, because the claims against Judge Deal are being transferred to the Northern District of Georgia and because Attorney Stanley allegedly defamed Attorney Clark by publishing the very orders Judge Deal authored, convenience and basic judicial economy demands that the claims against Attorney Stanley be handled in the

14

Northern District of Georgia as well. The claims against Attorney Stanley will therefore be transferred to the Northern District of Georgia pursuant to § 1404(a).

***

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The defendants' alternative motions to transfer (Doc. Nos. 9 & 13) are granted.

(2) This case is transferred to the United States District Court for the Northern District of Georgia.

(3) Any other motions are left for disposition after transfer.

The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.

DONE, this the 31st day of March, 2009.

    /s/ Myron H. Thompson
   UNITED STATES DISTRICT JUDGE